NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANNA MCCLEMENT, | Civil Action No. 09-522 (SRC) |
| Plaintiff, | |
| v. | OPINION |
| PORT AUTHORITY TRANS-HUDSON CORPORATION, et al, | |
| Defendants. | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion for summary judgment filed by Defendant Port Authority Trans-Hudson Corporation ("PATH") [docket item no. 36]. Plaintiff, Anna McClement, has opposed this motion [docket item no. 38]. After consideration of the parties' briefing, the Court has determined that it will grant Defendant's motion for summary judgment. In the following discussion, the Court gives its reasons for the decision.

**I.   FACTUAL BACKGROUND**

Plaintiff filed this retaliation and age discrimination action in this Court on February 5, 2009. An Amended Complaint followed on October 28, 2009. Based on the submissions currently before the Court, a brief summary of the relevant events follows.

Plaintiff, age fifty-one, began working for PATH on May 13, 2002 as a certified locomotive engineer. PATH is a bi-state governmental entity that was created in 1921 by a compact between New York and New Jersey, with the consent of Congress. *See* N.J.S.A. 32:1-1 *et seq.*; *King v. Port Authority of NY & NJ*, 909 F. Supp. 938, 943 n.4 (D.N.J. 1995), *aff'd*, 106

F.3d 385 (3d Cir. 1996). The PATH promotional process begins with a bulletin announcing the promotional opportunity. (Brophy Decl., Ex. E at 10:17-23). In the instant case, a bulletin was posted June 17, 2008 advertising the operations examiner training program in which Plaintiff was interested. (Brophy Decl., Ex. F.) The bulletin explicitly stated: "An unsatisfactory attendance record, and/or *pending disciplinary action* will disqualify a candidate from this promotional opportunity." *Id.* PATH's policy is that discipline does not expire until one year after it is instituted and employees can therefore be screened out of promotional opportunities during that year. (Brophy Decl., Ex. E at 60:19-61:21). However, even where an employee is not screened out of the opportunity, management of the hiring PATH Division has the discretion to pick the best candidate. (Brophy Decl., Ex. I at 43:20-22).

On July 6, 2007 Plaintiff used her cell phone to order food while operating a seven train passenger car. (Brophy Decl., Ex. K at 56:11-25). On July 17, 2007, Plaintiff was formally charged with violating the PATH Book of Rules as a result of this incident. (Brophy Decl., Ex. O). Plaintiff herself accepted responsibility for the infraction on July 30, 2007, and her union representative and the Superintendent of Transportation for PATH both signed off on August 1, 2007. *Id.*

Plaintiff applied for the operations examiner training program on July 1, 2008. (Brophy Decl., Ex. K at 65:20-66:2). Plaintiff was repeatedly advised that she was screened out of taking the promotional test due to her discipline within the prior year. (Brophy Decl., Exs. G, H, Q, R, and S). Plaintiff was among five employees that were screened out of the promotional opportunity. (Brophy Decl., Ex. T at 60:11-15). Plaintiff applied for a subsequent promotion posted October 15, 2008, and was not screened out because her disciplinary period had expired. (Brophy Decl., Exs. X and Y).

On September 27, 2008, Plaintiff filed an EEOC charge, alleging age and gender discrimination arising from events in December 2007. (Brophy Decl., Ex. U). Ultimately PATH officials received a dismissal and notice of rights indicating that Plaintiff's charge was not timely filed. (Brophy Decl., Ex. W).

On December 9, 2008, Plaintiff used a counterfeit parking pass to park in an unauthorized parking space. (Brophy Decl., Ex. GG). When questioned about the origin of the tag, Plaintiff responded that she "got [it] from PATH." *Id.* On December 12, 2008, Plaintiff was charged with displaying a fraudulent parking permit and for giving an inaccurate account of how she obtained that permit. (Brophy Decl., Ex. NN). On February 9, 2009, a hearing was held to investigate the charges against Plaintiff. (Brophy Decl., Exs. OO and K at 110:1-111:17). As a result of this hearing the charges stemming from the use of the fraudulent parking pass were sustained. (Brophy Decl., Ex. SS). Plaintiff's union representative requested an appeal, which was denied. (Brophy Decl, Exs. UU and VV). Finally, the Public Law Board sustained the denial. (Brophy Decl., Ex. WW).

## II.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate under FED. R. CIV. P. 56 when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any

weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### B.  State Law Claims

New Jersey and New York's bi-state compact prohibits one state from unilaterally imposing duties on the Port Authority, unless the sister state concurs in an act of legislation. *See* N.J.S.A. § 32:1-8. The Court notes at the outset that the interpretation of a bi-state compact is a question of federal law. *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 576 n.16 (3d Cir. 2002). Accordingly, the fact that the New Jersey Supreme Court has held that "complementary or parallel" legislation in New York and New Jersey does meet the "concurred in" standard established by the Port Authority compact, *Bunk v. Port Auth. of N.Y. & N.J.*, 144 N.J. 176 (1996), is in no way binding on this court.

Indeed, it appears that the Second Circuit has explicitly declined to unilaterally impose New York's human rights laws on the Port Authority where there is no evidence that either New York or New Jersey intended its anti-discrimination laws to apply. *Dezaio v. Port Auth. of N.Y. & N.J.*, 205 F.3d 62, 65 (2d Cir. 2000). Meanwhile, Third Circuit dicta has strongly indicated that it concurs with the Second Circuit opinion above. *Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*, 311 F.3d 273, 277-81 (3d Cir. 2002).

This Court agrees with the decision of Judge Greenaway in which he stated, the "[NJ]LAD may only be applied to the Port Authority if New York has concurrently adopted the same legislation [as New Jersey,] or if the states have similar legislation which purport to apply

to the Port Authority.  Since neither of these situations is present, [the NJ]LAD may not be applied to the Port Authority." *Hollingsworth v. Port Auth'y of N.Y. & N.J.*, Civil Action No. 06-571, 2009 WL 1702293, at *4 (June 16, 2009) (citing *King v. Port Auth'y of N.Y. & N.J.*, 909 F. Supp. 938, 945 (D.N.J. 1995)).

While this Court has not found any case law specifically addressing the applicability of the CEPA to PATH, the Court reasons that like the NJLAD, the CEPA does not apply to PATH. Neither the New York whistleblower law, McKinney's Labor Law § 740, nor the CEPA so much as mention PATH.  Accordingly, neither law may be applied to PATH.  *Hollingsworth*, 2009 WL 1702293, at *4 (finding that absence of reference to the Port Authority in either New York or New Jersey statutes was indication that neither legislature intended the laws to apply to the internal operations of the Port Authority).

    **C.**    **Age Discrimination in Employment Act**

        1.    <u>Discrimination</u>

In order to establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show that she: (1) was a member of a protected class, *i.e.*, was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision (4) under circumstances warranting an inference of age discrimination. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004).  Once a plaintiff has established a *prima facie* case for age discrimination, a court engages in the burden shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).

At the second step of the *McDonnell Douglas* framework the burden shifts to the "employer to articulate a legitimate, nondiscriminatory and nonretaliatory reason" for its employment decision. *Venter v. Potter*, No. 10-2062, 2011 WL 2134368, at *3 (3d Cir. May 27,

2011). Finally, if the employer is able to articulate such a rationale, the burden returns to the plaintiff, "who must show by a preponderance of the evidence that the employer's proffered reason is pretextual." *Id*. at *4. In order to establish pretext, "the plaintiff 'must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Id*. (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

      The first promotional opportunity at issue arose in July 2008. The bulletin noticing this opportunity explicitly stated: "An unsatisfactory attendance record, and/or *pending disciplinary action* will disqualify a candidate from this promotional opportunity." (Brophy Decl., Ex. F.) (Emphasis added). The deposition of Bertrand Drakes, a human resources employee for PATH, states the following with regard to disciplinary action's impact on promotion: "[employees] have a year from the time the discipline was instituted to run its full course -- if that period clashes with the test dates -- or the promotion date, sorry -- the announcement date or the closing date, if it clashes with that, then the candidate can be screen out because of that." (Brophy Decl., Ex. E. 60:21-61:2). While the PATH would have been better served by a clearer statements as to exactly what event triggers the start of the one year disciplinary period, as well as which event corresponds to the promotion in question, the Court will nonetheless go on to explore the various alternatives.

      The record is clear, and Plaintiff does not deny, that the relevant infraction took place July 6, 2007. Thus, this is the earliest possible event that could begin the running of the one year clock. Accordingly, Plaintiff would be screened from promotional opportunities until July 7,

2007. As stated in the record, the bulletin noticing this opportunity was posted June 17, 2008. This is clearly within the one year ineligibility term. Plaintiff applied for the opportunity on the deadline, July 1, 2008; again within the one year disciplinary period. In the alternative, the period may have begun at some later date including: the date she was formally charged (July 17, 2007); the date she accepted responsibility for the infraction (July 30, 2007); or the date her supervisor and union representative respectively signed off on her discipline (August 1, 2007). Obviously if any of these three options began the one year clock, Plaintiff would be rightfully screened from the promotional opportunity regardless of whether the bulletin posting date, application date, or closing date was the relevant date. Accordingly, Ms. McClement is unable to establish the second prong of the *prima facie* test above. She was *not* qualified for the position.

As for the subsequent promotional opportunities, November 2008 and September 2009, respectively, PATH has articulated a legitimate non-discriminatory reason not to promote her. Ms. Mclement's use of a counterfeit parking permit, and her subsequent inaccurate account of how she obtained it constitute a legitimate non-discriminatory reason for non-promotion. Plaintiff fails to show that this explanation was mere pretext. Moreover, three separate hearings sustained PATH's findings.

   2.   <u>Retaliation</u>

To establish a *prima facie* case of ADEA retaliation, "a plaintiff must show that: (1) (s)he was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 508-09 (3d Cir. 2004). The protected activity at issue here is Plaintiff's September 2008 filing of an EEOC charge. The supposed adverse employment action is the

February 2009 discipline. However, Plaintiff has failed to establish the existence of a causal link between these two incidents.

It is clear that PATH had sufficient reason for the disciplinary action, Plaintiff's EEOC complaint notwithstanding. *Id.* at 514. As indicated in the preceding section, the fact that the disciplinary action for the counterfeit parking pass was upheld by three separate bodies, indicates that Plaintiff was validly disciplined for her infraction, and not, as she would claim, retaliated against for her EEOC complaint.

### III.  CONCLUSION

For the foregoing reasons, this Court will grant Defendant's motion for summary judgment. An appropriate form of order will be filed together with this Opinion.

    s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: June 29, 2011